Juan Francisco MORELL, and Nicolas Francisco Morell, Plaintiffs

v.

UNITED STATES of America, Defendant.

Civ. No. 158–63.

United States District Court
D. Puerto Rico.
March 24, 1966.

amend its answer orally, so as to plead the statute of limitations prescribed by the Public Vessels Act, 46 U.S.C.A. §§ 781–790, the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, and the Federal Tort Claims Act, 28 U.S.C.A. § 2680(d), laches and plaintiff's failure to comply with the notice and venue requirements of the Public Vessels Act. The case was then tried on the merits, and the Court, having considered the testimonial and documentary evidence adduced, and argument of counsel, and being duly advised in the premises, now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On November 25, 1962, the yacht Dolphin, owned by Rafael Cano, requested the assistance of the Coast Guard. The Dolphin, a 32 foot 1962 Chris Craft Constellation, 11 feet in breadth, having a V-bottom bow tapering to a flat bottom at the stern, was aground on the southerly beach of Icacos Island, Puerto Rico. She was not hard aground.

2. Coast Guard Cutter CG–82320 went to the assistance of the Dolphin. Two of the cutter's men, Chief Alfredo Renedo, and Chief Louie Daniels, went ashore and found the yacht lying on the lee side of the island at an angle of about 45 degrees to the island.

3. After looking the situation over, the Coast Guard men decided that the best and most appropriate way to get the yacht afloat was to place a bridle around the yacht, then attaching the tow line to the bridle. The use of a bridle was necessary because the yacht was without facilities for the securing of the tow line. The yacht's bow would then be swung to starboard, pivoting, so as not to damage the yacht's screws and rudder.

4. Only two lines were available for a bridle, one a 3½ inch, new manila line, the other a 4-inch nylon line about one year old, but in good condition. It was decided to use the 3½ inch line for the bridle and the 4-inch line as the tow line, as experience had taught them that in

Nachman & Feldstein, Rieckehoff & Vargas, San Juan, P. R., for plaintiffs.

Anthony W. Gross, Dept. of Justice, Washington, D. C., Francisco A. Gil, U. S. Atty., San Juan, P. R., for defendant.

RUIZ-NAZARIO, Chief Judge.

This case was originally filed as a civil action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), by the father of Nicolás Francisco Morell, who was at that time a minor. On the morning of the trial, plaintiff was granted leave, orally, to amend his complaint so as to add Nicolás Francisco Morell, the person actually injured, as the latter had by that time reached his majority. An amended complaint was filed on July 10, 1963, demanding relief under the Extension of Admiralty and Maritime Jurisdiction Act, 46 U.S.C.A. § 740 as an alternative to the relief claimed in the original civil action. The Government moved to dismiss the amended complaint; the motion was denied with leave to renew same at the trial. On the morning of the trial defendant was permitted to

case the yacht failed to respond to strain, the larger line would tear into the vessel.

5. No chafing gear was available.

6. The 3½ inch manila line was placed completely around the yacht's hull, about one half way up. It was secured by stoppers made of small line. A bowline was made at each of the bitter ends of the bridle, and the 4-inch line was spliced with an eye spliced around a thimble. A steel shackle was then fitted into the two eyes at each of the two ends of the bridle and the eye of the tow line, and secured with a screw type pin. The tow line, about 400 feet long, was secured to the CG–82320.

7. Upon termination of the operation described in Finding 6, the Coast Guardsmen ordered the bystanders, in English and Spanish, to move back because the line might part and injure them. These spoken warnings were supplemented by gestures.

8. When strain was taken on the line, slowly, the bow stopper broke, causing part of the bridle to fall. When Chief Renedo walked to resecure the stopper, plaintiff, Nicolás Francisco Morell, although not asked to do so, joined to help him. After he had secured the stopper, Renedo, in Spanish, warned plaintiff Nicolás Francisco Morell to move back out of range.

9. After receiving a go ahead signal from Chief Daniels, one engine of the cutter was started at slow speed and then the second, causing it to move forward at idle speed. The yacht's bow swung to starboard for about four feet.

10. The go ahead signal was not given until the Coast Guardsmen had made certain that the area was clear.

11. Plaintiff Nicolás Francisco Morell, was not in the danger area when the go ahead signal was given.

12. About two or three minutes after the go ahead signal, the bridle parted and struck said plaintiff, who fell to the ground. Renedo was brushed by the bitter end of the line but did not fall.

13. Plaintiff, Nicolás Francisco Morell, suffered a fracture of the middle third of the tibia and fibula of the right leg. He was taken to Fajardo, Puerto Rico by private motor boat, and thence to the Auxilio Mutuo Hospital, where his leg was placed in a cast. He was discharged from the hospital on December 5, 1962.

14. After the plaintiff, Nicolás Francisco Morell, had been taken away from the scene of the accident, another attempt was made to refloat the "Dolphin". The yacht's bow had swung to starboard, and it was possible to clear her screws from the sand. A bridle was then fashioned with the 4-inch line, and the yacht was towed astern and refloated.

15. The men of the Coast Guard cutter, at all times during the episode now before the Court, went about the task of refloating the "Dolphin" in a seamanlike manner, using the best judgment formed on the basis of their experience and training, and plaintiffs have failed to show to the satisfaction of the Court, by a preponderance of the evidence, that negligence by the Coast Guardsmen was the proximate cause of the unfortunate accident herein.

## CONCLUSIONS OF LAW

I. This Court has jurisdiction in this case under the Suits in Admiralty Act, 46 U.S.C.A. § 742, and the Public Vessels Act, 46 U.S.C.A. § 782.

II. The United States was not an insurer against the accident herein.

III. Plaintiffs herein had the burden of proving, by a preponderance of the evidence, negligence on the part of the Coast Guard.

IV. Plaintiffs are not entitled to any damages from defendant.

V. The suit must be dismissed.